# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMIE KIRNON, | : | |
| Petitioner, | : | |
|  | : | CIVIL ACTION |
| v. | : | |
|  | : | NO. 07-4474 |
| MICHAEL KLOPOTOSKI, et al. | : | |
| Respondents. | : | |
|  | : | |
|  | : | |
|  | : | |

## Memorandum and Order

YOHN, J.                                                      December 17, 2008

Presently before the court is petitioner Jamie Kirnon's pro se motion for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Kirnon is currently serving a life sentence for the first

degree murder of Darius Cuthbert, as well as consecutive sentences for related charges. After

conducting a de novo review of the Report and Recommendation of United States Magistrate

Judge Elizabeth T. Hey, and upon consideration of petitioner's objections thereto, the court will

overrule petitioner's objections, adopt in substantial part the Report and approve the

Recommendation.

## I.      Factual and Procedural Background

The Pennsylvania Superior Court, in reviewing Kirnon's direct appeal, set forth the facts

that are material to Kirnon's instant habeas petition:

> Testimony at trial revealed that on November 18, 1998, appellant and another
> man engaged Darius Cuthbert and his friend Omar Johnson in a combative
> conversation at the intersection of Colorado Street and Susquehanna Avenue in

1

Philadelphia.  Trial Court Opinion, 1/29/04, at 1.  An argument involving the sale of drugs ensued between the two groups of men.  *Id.* at 2.  Mr. Johnson testified that appellant and the other man each pulled out a nine-millimeter handgun, the other man fired the first shot, and appellant then began firing his weapon.  *Id.*

Danny Gissentanner, a friend of both Mr. Cuthbert and Mr. Johnson who was nearby at the time, testified that after the shooting he immediately determined that Mr. Cuthbert was dead, proceeded to remove a handgun belonging to Mr. Johnson from the scene and place it in the trunk of his Nissan Maxima, and then attempted to take Mr. Johnson to the hospital.  *Id.*  The police arrived and assisted in taking Mr. Cuthbert and Mr. Johnson to Temple [University] Hospital, where Mr. Johnson was treated for eight gunshot wounds and Mr. Cuthbert was pronounced dead as a result of his five gunshot wounds.  *Id.* at 2-3.

Police officers recovered Mr. Johnson's handgun from the Nissan Maxima, and ballistics showed that no casings had been ejected from the weapon.  *Id.* at 2.  Crime scene technicians arrived, photographed the scene, collected evidence, and determined that all of the fired casings were from nine-millimeter firearms.  *Id.* at 3.

Thereafter, Mr. Gissentanner identified appellant as one of the shooters, an arrest warrant was issued, and appellant was eventually arrested.  *Id.*

*Commonwealth v. Kirnon*, 604 EDA 2004, at 1-3 (Pa. Super Ct. Jan. 13, 2005).

On November 4, 2003, the jury found Kirnon guilty of first degree murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possession of an instrument of crime.  (Trial Tr. vol. 7, 3-4, Nov. 4, 2003.)  After a penalty phase, the jury sentenced Kirnon to life imprisonment on the murder charge.  (Trial Tr. vol. 8, 83, Nov. 5, 2003.)  The Honorable Gary Glazer, who presided over the trial, also imposed consecutive sentences of 72-144 months for aggravated assault and 42-84 months for criminal conspiracy.  (Sentencing Tr., 4-5, December 22, 2003.)  Judge Glazer entered a sentence of guilty without further penalty on the remaining firearms offenses.  (*Id.*)

Kirnon filed an appeal in the Pennsylvania Superior Court, challenging both the sufficiency and weight of the evidence admitted at trial.[1]  Kirnon's argument primarily rested on

---

[1] On direct appeal, Kirnon framed the issues as:
[1] Was the evidence sufficient to support the verdicts of guilty given that the three

inconsistent statements made by key witnesses.  The Superior Court found that "[t]he evidence, as produced at trial, clearly established that [Kirnon] was not only present at the scene of the murder, but that he, along with his associate, actively participated in the shooting of a rival drug dealer after an argument concerning their illegal activities." *Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 5 (Pa. Super. Ct. Jan. 13, 2005).  Accordingly, the Superior Court affirmed the judgment of sentence.  *Id.* at 7.  Kirnon did not seek discretionary review to the Pennsylvania Supreme Court.

Pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46, Kirnon filed a pro se PCRA petition on January 13, 2006 arguing that: (1) the evidence offered at trial was insufficient to sustain a conviction on the firearms charge and insufficient to establish the requisite mens rea for the murder charge; (2) the prosecutor unconstitutionally injected race into the trial by referring to Kirnon as a "black drug dealer" and a "murderer" in closing argument; (3) the prosecutor knowingly presented perjured testimony; (4) his trial counsel was ineffective for failing to strike a juror during voir dire, failing to properly impeach the chief state witness, and failing to properly cross-examine state witnesses; (5) the trial court erred when instructing the jury on "flight to avoid prosecution" and the elements of murder, and the court erred in failing to instruct the jury on self-defense; and (6) the state

---

critical witnesses were so inconsistent and contradictory, both internally and when contrasted with each other, as to render any verdict based thereon the product of speculation, guesswork and conjecture?

[2] Was the verdict against the weight of the evidence when the evidence presented was so internally inconsistent and contradictory among and between the witnesses that it vitiated any credibility, thus rendering the verdicts so offensive to a reasonable sense of justice that justice must be given another opportunity to prevail?

*Commonwealth v. Kirnon*, 604 EDA 2004, at 3 (Pa. Super. Ct. Jan. 13, 2005) (citing Kirnon's direct appeal brief).

violated the Vienna Convention.  (Petr.'s PCRA Br. at 1-35.)

After reviewing the case file and meeting with Kirnon, Kirnon's appointed PCRA counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).[2]  On October 5, 2006, the PCRA court dismissed Kirnon's petition.  *Commonwealth v. Kirnon*, May Term 2001, No. 0374, slip op. at 11 (Phil. Ct. C. Pl. Oct. 5, 2006) (Glazer, J.). Kirnon appealed the dismissal on October 19, 2006, raising twenty-two grounds for relief.[3]  In its

---

[2] Under *Finley*, a PCRA court can grant leave for appointed counsel to withdraw from the case upon the review of counsel's "no-merit" letter.  A no-merit letter must list each of the issues counsel reviewed and explain the reasoning that led counsel to find that the petitioner's claims were meritless.  *Id.* at 215.  The *Finley* court explained that the PCRA court then must engage in an "independent review" of the record in deciding whether petitioner's claims are meritless.  *Id.*

[3] Kirnon asserted the following twenty-two grounds:
1:  The court erred by dismissing PCRA petition without conducting its own independent review of the certified record.
2:  The court erred  by dismissing PCRA petition without ruling on petitioner's motion for change of appointed counsel.
3:  The court erred by dismissing PCRA petition without first ruling on petitioner's objections pursuant to; [sic] PA.R.Crim. Pro. 907 of the court's notice to dismiss.
4:  PCRA counsel was ineffective for failing to do an independent review of the record.
5:  PCRA counsel was ineffective for not listing each issue on petitioner's PCRA petition.
6:  PCRA counsel was ineffective for not making any kind of arrangement or attempt at interviewing petitioner in order to discuss the issues petitioner raised.
7:  The evidence was insufficient to sustain a conviction on the firearms violation and Trial counsel as well as Appellate counsel failed to challenge the inconsistent statements of Commonwealth witness Daniel Gissentanner.
8:  Trial counsel was ineffective for failing to object and move for a mistrial when in summation, the Commonwealth referred to petitioner as a; [sic] "[B]lack drug dealer and Murderer."
9:  Trial counsel was ineffective for not striking Denene Brown from serving on petitioner's jury and appellate counsel was ineffective for failing to raise this issue on post-trial and on direct appeal.
10: The state created as impediment to petitioner's Sixth Amendment right to counsel by repeatedly violating the Vienna Convention and implementing Legislation at 28 CFR 50.5.

July 24, 2007 opinion, the Superior Court addressed fourteen of Kirnon's claims.  The court held

that Kirnon failed to conform the majority of his appeal to Pennsylvania Rules of Appellate

Procedure 2116 (Statement of Questions Involved) and 2119 (Argument).  As a result, the court

---

11: Petitioner's trial counsel was ineffective for failing to impeach the Commonwealth's chief witness on cross-examination during trial on; [sic] October 30, 2003.

12: Petitioner was denied Due Process and Equal Protection of the law under the Sixth and Fourteenth Amendment of the United States Constitution and these same rights was [sic] denied under the Pennsylvania Constitution.

13: The Prosecution violated Petitioner's right by knowingly using perjured testimony and [petitioner] was denied Due Process of Law under the Fourteenth Amendment.

14. The Trial Court erred in charging the jury on the elements of "Flight to Avoid Prosecution," when Petitioner was not charged with such offense, and Trial Counsel rendered ineffective assistance of counsel in not objecting to this charge.

15: The Trial Court committed error in charging the jury on the elements of the murder, "Killing is with malice if killer acts with 'intent'."  Trial Counsel rendered ineffective assistance of counsel in not objecting to this charge.

16: The Trial Court committed error in not giving a reasonable doubt defense instruction, and Trial Counsel rendered ineffective assistance of counsel in not requesting a self-defense instruction.

17: The Trial Court erred in instructing the jury on the elements of conspiracy where the Trial Court stated that conspiracy was "Like shooting someone."  Trial Counsel rendered ineffective assistance of counsel for not objecting to this instruction.

18: Trial Counsel rendered ineffective assistance of counsel in failing to properly cross-examine Detective Rossiter.

19: Trial Counsel rendered ineffective assistance of counsel in failing to properly cross-examine Detective Jaconier.

20: Trial Counsel was ineffective for failing to utilize Marion Wilson, whose statement to Police consisted of language showing self-defense, where this witness gave statement that, "[a]ll had their guns out."

21: The prosecutor committed misconduct in speaking about petitioner when remarks were made to the jury that, "[i]t is his time they've paid.  Now its his time."  Trial counsel was ineffective to object to those remarks.

22: The Prosecutor committed further misconduct in introducing the perjured testimony of; [sic] Omar Johnson, N.T. pgs. 41-44 & 48-49.  This perjury is evident by the testimony of Officer McKeerer.

(Pet. Br. App. PCRA Judg. at 2-2D.)

found eleven of Kirnon's claims to be procedurally defective and declined to reach the merits

accordingly. The court did reach the merits of three claims relating to the ineffectiveness of

Kirnon's PCRA counsel. Upon review, the court found "no arguable merit" in Kirnon's

allegations and upheld the dismissal of Kirnon's PCRA petition. *Commonwealth v. Kirnon*, No.

3235 EDA 2006, slip op. at 12 (Pa. Super. Ct. Jul. 24, 2007). Kirnon's petition for reargument

was denied on September 28, 2007, and he did not seek discretionary review with the

Pennsylvania Supreme Court.

     On October 25, 2007, Kirnon filed this petition for habeas corpus raising nine grounds for

relief:

    I.     The state created an impediment to petitioner's Sixth Amendment right to counsel through consular representation by violating the Vienna Convention;

    II.    The trial court erred in charging the jury on the elements of flight to avoid prosecution when petitioner was not charged with that offense, and trial counsel rendered ineffective assistance of counsel by not objecting to such a charge;

    III.   Trial counsel rendered ineffective assistance of counsel for failing to impeach the chief Commonwealth witness, Omar Johnson, with prior inconsistent statements;

    IV.   Trial counsel rendered ineffective assistance of counsel for failing to object and move for a mistrial when in summation, the prosecution referred to petitioner as a black drug dealer and murderer;

    V.    Prosecutorial misconduct stemming from the prosecutor's racially-based comment made during closing argument;

    VI.   The prosecution violated petitioner's Sixth and Fourteenth Amendment rights by knowingly eliciting and using the perjured testimony of Daniel Gissentanner;

    VII.   Trial and appellate counsel rendered ineffective assistance of counsel for failing to challenge the inconsistent statements made by Commonwealth witness Daniel Gissentanner;

    VIII.  The evidence was insufficient to sustain a conviction for a firearms violation

6

where the evidence of such was based on perjured testimony and inconsistent statements of Commonwealth witness Daniel Gissentanner; and

IX.    Petitioner was denied due process and equal protection under the Sixth and Fourteenth Amendments because the Commonwealth failed to prove first degree murder and related offenses beyond a reasonable doubt.

The District Attorney filed its response on January 18, 2008, arguing the petition was untimely and its claims were procedurally defaulted.  Kirnon filed his response and supporting memorandum on March 11, 2008.  On March 12, 2008, the District Attorney filed a sur-reply acknowledging the petition's timeliness, but still advancing its default argument.

## II.    Standard of Review

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  After completing such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*  Magistrate Judge Elizabeth T. Hey found that Kirnon's habeas petition should be dismissed because: (1) six of Kirnon's nine habeas petition claims are subject to procedural default, (2) no constitutional violation stems from the prosecutor's closing statement, and (3) Kirnon's convictions are supported by sufficient evidence.

In response, Kirnon has filed objections to the Report and Recommendation with respect to all three of the magistrate judge's findings.  First, Kirnon argues that the denial of an evidentiary hearing by the PCRA court restricted his ability to establish certain facts on the record.  Because these facts were absent from the record, Kirnon believed that he could not raise

7

the issues in his PCRA appeal.  Kirnon asserts that this circumstance constitutes cause for his

procedural default.  Second, Kirnon argues that the convictions are not supported by sufficient

evidence.  This argument is based primarily on inconsistent testimony offered by key witnesses at

trial.  Finally,  Kirnon argues that the prosecutor unconstitutionally injected race into the trial

during the prosecutor's summation, thereby denying Kirnon due process.

The court addresses these issues de novo.

## III.   Discussion

### A.   Exhaustion

A habeas petitioner must exhaust available state court remedies prior to obtaining any

habeas relief.  28 U.S.C. § 2254(b)(1)(A).  Kirnon raised claims I-IV, VI and VII in his PCRA

appeal[4] and claims VIII and IX in his direct appeal.  Although Kirnon did not file for

discretionary review with the Pennsylvania Supreme Court, as of May 9, 2000, the Pennsylvania

Supreme Court does not require petitioners to file for discretionary relief to satisfy exhaustion

requirements.  *See Lambert v. Blackwell*, 387 F.3d 210, 232-33 (3d Cir. 2004).  As a result,

claims I-IV and VI-IX are exhausted.

In claim V, Kirnon alleges prosecutorial misconduct stemming from the prosecutor's use

of the phrase: "black drug dealer and murderer.  Kirnon may have raised this claim in his original

PCRA petition, but did not raise it in his direct appeal or his PCRA appeal.  In claim number

twenty-one of his PCRA appeal, Kirnon raised another prosecutorial misconduct claim centering

on the prosecutor's use of a different phrase: "[i]t is his time they've paid.  Now its his time."  As

---

[4] Claims I-V, VI and VII in this habeas petition correspond to claims 10, 14, 11, 8, 13, and 7 respectively in Kirnon's appeal from the denial of his PCRA petition.

mentioned, to properly exhaust his state remedies, Kirnon must present his claims to the

Pennsylvania Superior Court.  *See Williams v. Folio*, 2008 WL 336306, *3 (E.D. Pa. Feb. 4,

2008) (reiterating that "a habeas petitioner successfully exhausts a claim by bringing it to the

Superior Court either on direct appeal or during PCRA proceedings").   Because Kirnon did not

raise his prosecutorial misconduct claim concerning the phrase "black drug dealer and murderer"

in either his direct appeal or his PCRA appeal, Kirnon has failed to exhaust his state remedies for

claim V.  *Cf. Morton v. Moore*, 255 F.3d 95, 103 n.7 (3d Cir. 2001) (declining to review some of

petitioner's prosecutorial misconduct claims where factual predicates for the claims (i.e., the

prosecutor's particular actions/statements) were not raised in each New Jersey state court); *see*

*also McCandless v. Vaughan*, 172 F.3d 255, 261 (3d Cir. 1999) ("To 'fairly present' a claim, a

petitioner must present a federal claim's factual and legal substance to the state courts in a

manner that puts them on notice that a federal claim is being asserted.").

Moreover, because the time to exhaust this claim has passed, 42 Pa. Cons. Stat. §

9545(b), claim V is procedurally defaulted.  *Coleman*, 501 U.S. at 735 n.1 (reasoning that when

"the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred . . . there is a procedural

default for purposes of federal habeas").  Petitioner, as described in the next section, has not

established cause and prejudice or a fundamental miscarriage of justice to overcome his

procedural default.  Thus, petitioner cannot now seek relief for claim V.

## B.      Procedural Default: Claims I-VII

"[I]f the final state court presented with [the] federal claim refuses to decide its merits

based on an established state rule of law independent of the federal claim and adequate to support

9

the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing

of innocence." *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (citing *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991)); *see also Wainwright v. Sykes*, 433 U.S. 72, 86 (1977)

(articulating "cause and prejudice" standard).  A state procedural ground is "independent" if it

does not rest primarily on and does not appear to be interwoven with federal law.  *Coleman*, 501

U.S. at 734-35 (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)); *see also Campbell v.*

*Burris*, 515 F.3d 172, 177 (3d Cir. 2008) (focusing inquiry on whether "state law alone provides

everything necessary to support the court's judgment").  A rule is an "adequate" ground when it

speaks in clear and unmistakable terms and when courts apply its requirements with consistency

and regularity.  *Campbell*, 515 F.3d at 176 (citing *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir.

1996)).  The adequacy and independence of the state procedural ground must be clear from the

face of the state court opinion.  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989) (applying *Michigan*

*v. Long*'s "plain statement rule" to district courts reviewing habeas petitions).

    On direct appeal, the Pennsylvania Superior Court reached the merits of Kirnon's

sufficiency claims (VIII and IX).  Thus, these claims are not subject to default.  Conversely,

Kirnon raised claims I through IV, VI and VII in his PCRA appeal, and the Superior Court

disposed of the claims on state procedural grounds.  Specifically, the court relied on

Pennsylvania Rules of Appellate Procedure 2116(a) and 2119(a).  The rules govern appellate

brief format and content, and read as follows:

**Rule 2116 Statement of the Questions Involved.[5]**

**(a) General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby. Whenever possible each question must be followed immediately by an answer stating simply whether it was affirmed, negatived, qualified or not answered by the court or government unit below. If a qualified answer was given to the question, appellant shall indicate, most briefly, the nature of the qualification, or if the question was not answered and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

**Rule 2119 Argument.**

**(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

The Superior Court, the highest court to address these claims, held that Kirnon failed to comply with Rules 2116(a) and 2119(a), noting that "the defects in [Kirnon's] brief [were] substantial." *Commonwealth v. Kirnon*, No. 3235 EDA 2006, slip op. at 8 (Pa. Super. Ct. Jul. 24, 2007). The "statement of questions involved" far exceeded the page limit, and "most of the arguments advanced by [Kirnon] include bald assertions of error and references to his version of the facts expressed as legal conclusions." *Id.* The Superior Court was unambiguous in its application of Rules 2116(a) and 2119(a), and at no point in the opinion does it reach the merits of claims I-IV, VI or VII. In addition, the court reasoned that Rules 2116(a) and 2119(a) offer clear guidelines for compliance, and careful review confirms that state and federal courts have

---

[5] This rule has been amended, and the amendment was adopted by the Supreme Court of Pennsylvania on July 11, 2008. At the time of Kirnon's PCRA appeal, the rule as stated above governed.

applied these rules consistently.[6]  As a result, Kirnon's failure to comply with Rules 2116(a) and 2119(a) constitutes procedural default with respect to claims I-IV, VI and VII.  When combined with Kirnon's failure to exhaust claim V, Kirnon has procedurally defaulted claims I-VII.

Kirnon can overcome procedural default with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice."  *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (quoting *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 1999) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)); *see also Coleman*, 501 U.S. at 750 (applying "cause and prejudice" standard to district court review of habeas petitions).  To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Prejudice" requires that the "habeas petitioner . . . show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

Kirnon's arguments for cause relate to (1) the failure of the PCRA court to hold an evidentiary hearing to develop his ineffective assistance of counsel claims; (2) his PCRA

---

[6] *See, e.g.*, *Williams v. Folino*, 2008 WL 336306, *5 (E.D. Pa. Feb. 4, 2008) (noting that failure to comply with Rule 2116 constitutes default and that state courts consistently apply rule); *Washington v. Patrick*, 2007 WL 3231705, *1 (E.D. Pa. Oct. 30, 2007) (holding that failure to comply with Rule 2119 constituted adequate and independent state ground for dismissal of habeas claim); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. Ct. 2006) (noting that compliance with Rule 2119(a) is "[o]f particular importance" and reminding that "[i]t is not the duty of the Superior Court to act as an appellant's counsel"); *Commonwealth v. Burkett*, 830 A.2d 1034, 1038 (Pa. Super. Ct. 2003) (dismissing sufficiency claim as underdeveloped pursuant to Rule 2119(a)); *Thomas v. Elash*, 781 A.2d 170, 176-77 (Pa. Super. Ct. 2001) (reasoning that compliance with Rule 2116(a) is mandatory and holding that failure to comply precludes review of the substantive claim).

counsel's *Finley* letter, and (3) Kirnon's own reasonable belief as to his compliance with Pennsylvania's appellate procedure.  With respect to his PCRA counsel, Kirnon argues that the *Finley* letter deprived him of an opportunity to raise his PCRA arguments and to develop an evidentiary base in the first instance, and forced Kirnon to proceed with his PCRA appeal pro se. Kirnon argues that the combined effect constitutes cause.  The allegations are properly construed as an ineffectiveness of counsel argument.  The Supreme Court has recognized that ineffectiveness of trial and direct appeal counsel may establish "cause" where counsel is constitutionally ineffective.  *Carrier*, 477 U.S. at 488 (applying the standard from *Strickland v. Washington*, 466 U.S. 668 (1984)).  However, the ineffectiveness of PCRA counsel is not a constitutional violation,  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), as the Sixth Amendment right to counsel does not extend beyond direct appeal, *id.* (holding that petitioner does not have a constitutional right to counsel "when attacking a conviction that has long since become final upon exhaustion of the appellate process").  Without a constitutional violation, a counsel's ineffectiveness does not constitute "cause" and cannot overcome procedural default. *Coleman*, 501 U.S. at 755 (reasoning that "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation"); *see Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) ("Because [petitioner] had no Sixth Amendment right to representation at his PCRA hearing, his counsel's ineffective assistance cannot establish cause for [petitioner's] procedural default.").  Likewise, Kirnon's pro se argument also fails.  Kirnon's status as a pro se petitioner, standing alone, does not obviate the need to comply with appellate procedures.  *See Caswell v. Ryan*, 953 F.2d 853, 862 (3d Cir. 1992).  Further, Kirnon's remaining assertions are meritless, as his assertions point to no external impediment that prevented his compliance with Rules 2116

and 2119.   As a result, Kirnon is unable to show cause for his procedural default.

If a petitioner is unable to demonstrate cause and prejudice, a district court still can consider the defaulted claims if the failure to do so would result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 748.  The miscarriage of justice exception is "explicitly tied . . . to the petitioner's innocence."  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Thus, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence."  *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 536-37 (2006) (discussing application of *Schlup* standard to "actual innocence" inquiry). Innocence in this context "means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  Kirnon's petition does not present any evidence or argument of factual innocence.  Therefore, the actual innocence gateway is inapplicable.

Because Kirnon cannot establish cause and prejudice or actual innocence, claims I-VII remain subject to procedural default.

### C.    Sufficiency of the Evidence:  Claims VIII and IX

In his petition, Kirnon argues that his convictions are not supported by sufficient evidence.  The argument centers on the inconsistent testimony of two eyewitnesses and a former girlfriend.  As mentioned above, Kirnon raised these issues on direct appeal, and the Superior Court reached the merits in affirming the conviction; therefore, the court may properly review the claims now.

"[T]o convict a defendant the government must prove each element of a charged offense beyond a reasonable doubt."  *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008) (citing *In*

14

*re Winship*, 397 U.S. 358, 364 (1970)).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), district courts cannot grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,"  28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

      1.        **Section 2254(d)(1)**

     I turn my focus first to § 2254(d)(1), to consider whether the Superior Court determination was "contrary to" or an "unreasonable application of" clearly established federal law.  A state court decision is "contrary to" Supreme Court precedent if the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law or if the state court decides the case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000) (interpreting § 2254(d)(1)); *see Marshall v. Hendricks*, 307 F.3d 36, 51 (3d Cir. 2002).  An "unreasonable application" of federal law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the petitioner's case."  *Terry Williams*, 529 U.S. at 413.

     The Supreme Court established the federal law relevant to petitioner's claims VIII and IX in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under *Jackson*, a court reviewing a sufficiency challenge must determine "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'"  *Sullivan v. Cuyler*, 723 F.2d 1077, 1083-84 (3d Cir. 1983)

(quoting *Jackson*, 443 U.S. at 319) (emphasis in original).  The adoption of AEDPA has altered

this inquiry by adding an additional level of deference.   Under § 2254(d)(1), the court must

determine whether the state court's application of the *Jackson* standard was itself an

unreasonable application of that federal standard.  *See* § 2254(d)(1); *Tucker v. Palmer*, 541 F.3d

652, 666 (6th Cir. 2008); *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  On direct

appeal, the Superior Court concluded that Kirnon's convictions were supported by sufficient

evidence.[7]  After review, I conclude that this determination is neither contrary to nor an

unreasonable application of the *Jackson* standard.

First, the Superior Court's reasoning is not contrary to a clearly established federal law.

At the outset of its decision, the Superior Court set forth the proper standard of review:

> The standard of review we apply in reviewing the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 3 (Pa. Super. Ct. Jan. 13, 2005).

After reviewing the evidence, the Superior Court the court reasoned:

> Viewing all evidence in the light most favorable to the Commonwealth, we find that there was sufficient evidence for the jury to conclude that appellant committed the charged crimes.

---

[7] The Superior Court also rejected Kirnon's weight of the evidence claim.  The court reasoned that Kirnon had merely repackaged his sufficiency claim as a weight of the evidence argument.  *Id.*  The court concluded that "[e]ven if there were inconsistencies in the witnesses' testimony, as alleged by appellant, it was nevertheless within the sole province of the jury to weigh and determine the credibility of the evidence presented."  *Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 5 (Pa. Super. Ct. Jan. 13, 2005).

*Id.* at 5.   Importantly, "a run-of-the-mill state-court decision applying the correct legal rule from

[Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within §

2254(d)(1)'s 'contrary to' clause."   *Williams*, 529 U.S. at 406.  Although the Superior Court did

not articulate the *Jackson* standard specifically, Pennsylvania law is co-extensive with the

*Jackson* inquiry.   *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1232

(3d Cir. 1992).   The Superior Court weighed the evidence *in favor of the prosecution* and asked

whether "the jury" could "conclude that the appellant committed the charged crimes."

*Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 5 (Pa. Super. Ct. Jan. 13, 2005).  This

reasoning is consistent with and a "run-of–the-mill" application of the  *Jackson* standard.  *See*

*Williams*, 529 U.S. at 406.  Thus, the Superior Court's determination is not "contrary to" the

legal standard the Supreme Court established in *Jackson*.

The remaining question, therefore, is whether the Superior Court unreasonably applied

the *Jackson* standard.  The Superior Court, after setting forth the elements[8] for each of Kirnon's

---

[8] Quoting the appropriate statutory language, the Superior Court stated the elements of the crimes as follows:

To support a charge of first-degree murder, the Commonwealth must prove that the defendant committed an intentional killing. 18 Pa. C.S.A. § 2502(d).  A criminal homicide constitutes murder of the first degree when "it is committed . . . by any [kind] of willful, deliberate, and premeditated [act]."   18 Pa. C.S.A. § 2502(d).

To support a charge of aggravated assault, the Commonwealth must prove that the defendant "attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa. C.S.A. § 2702(a)(1).

To support a charge of criminal conspiracy, the Commonwealth must prove that the defendant, "with the intent of promoting or facilitating the commission of a crime, agrees with another person or persons that they or one or more of them will engage in conduct which constitutes such crime; no person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he

convictions, found the following:

> The evidence, as produced at trial, clearly established that [Kirnon] was not only present at the scene of the murder, but that he, along with his associate, actively participated in the shooting of a rival drug dealer after an argument concerning their illegal activities. Witnesses to the shooting, including a victim of the shooting, testified that appellant fired numerous shots from the nine-millimeter handgun that he had pulled from his waist concurrently with his associate. Therefore, the charges of murder, aggravated assault, criminal conspiracy, carrying a firearm on a public street, and possessing an instrument of crime, were well supported at trial.

*Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 5-6 (Pa. Super. Ct. Jan. 13, 2005).

Kirnon's objections focus on inconsistent statements offered by three witnesses.[9]  Even if these

---

conspired.  18 Pa. C.S.A. § 903(a)(1), (e).
> To support a charge of carrying firearms on a public street, the Commonwealth must prove that the defendant carried "a firearm, rifle or shotgun at any time upon the public street . . . [without] a license or exemption."  18 Pa. C.S.A. § 6108.
> And, to support a charge of possessing an instrument of crime, the Commonwealth must establish that the defendant "possessed anything commonly used for criminal purposes under circumstances not manifestly appropriate for the lawful uses it may have, with the intent to employ it criminally."  18 Pa. C.S.A. § 907(a), (d).

*Commonwealth v. Kirnon*, No. 0604 EDA 2004, slip op. at 4-5 (Pa. Super. Ct. Jan. 13, 2005).

[9] Johnson's inconsistent statement was given to police when first questioned.  Initially, Johnson told police that Kirnon's group began to shoot as they approached. (Trial Tr. vol. 4, 54-55, Oct. 30, 2003.)  At trial, Johnson testified that a five to ten minute argument over drug territory transpired prior to the shooting. (*Id.* at 21.)

Gissentanner gave several conflicting reports to investigators, all of which Kirnon's counsel raised during cross-examination.  At first, Gissentanner told police that he was not at the scene of the crime, but had heard the shots. (*Id.* at 103.)  After police told Gissentanner that another witness placed him at the scene, Gissentanner admitted to being present during the shooting. (*Id.* at 108.)  In his third version, Gissentanner identified Kirnon as one of the shooters. (*Id.* at 114-15.)  Finally, when interviewed by an investigator working for the defense, Gissentanner stated that he did not see Kirnon with a weapon. (*Id.* at 125-27.)  Gissentanner did testify, however, that Kirnon had spoken with him several times while both were in jail. (*Id.* at 128.)  Gissentanner testified that he was afraid of Kirnon and complied with Kirnon's request to alter his story in light of this fear. (*Id.* at 100.)

Finally, Kirnon's girlfriend at the time of the shooting testified that she reached out to homicide investigators while angry with Kirnon for alleged infidelity. (Trial Tr. vol. 5, 59-63,

inconsistencies prompt credibility concerns, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The jury was presented with the inconsistencies and potential biases, and the determination of credibility was solely within its province. Thus, Kirnon's credibility arguments do not alter the court's conclusion regarding the Superior Court's application of *Jackson*.

Instead, I find that the Superior Court properly enunciated the elements of Pennsylvania law and applied the law to facts of Kirnon's case. Viewing the evidence in the light most favorable to the prosecution, a "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Sullivan*, 723 F.2d at 1083-84 (3d Cir. 1983) (quoting *Jackson*, 443 U.S. at 319). Therefore, I hold that the Superior Court was not unreasonable in applying the relevant federal law. Because the Superior Court's review of Kirnon's sufficiency claim was not contrary to or an unreasonable application of the *Jackson* standard, § 2254(d)(1) does not afford Kirnon a ground for habeas relief.

### 2.      Section § 2254(d)(2)

Finally, I find that Kirnon's conviction was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Under § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Lambert v. Blackwell*, 387 F.3d 210,

---

Oct. 31, 2003.) Additionally, on cross, Fielding testified to making a conflicting statement to Kirnon's investigator. Fielding told the investigator that her original statement to homicide detectives was not true. (*Id.* at 62-63.)

19

234 (3d Cir. 2004) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).  "'Yet, deference does not imply abandonment or abdication of judicial review. . . . In other words, deference does not by definition preclude relief.'"  *Id.* at 234-35 (quoting *Miller-El*, 537 U.S. at 340) (citations and alterations omitted).

As quoted above, the Superior Court found that the evidence "clearly established" Kirnon's guilt.  My review of the record supports the Superior Court's conclusion: At trial, Johnson testified that Kirnon, Raphael Stewart and an unidentified man approached Cuthbert as Cuthbert and Johnson were talking.  (Trial Tr. vol. 4, 20, Oct. 30, 2003.)  Johnson's testimony revealed that Kirnon and Stewart believed that Cuthbert was encroaching on a "coke house" in North Philadelphia that Kirnon and Stewart controlled.  (*Id.* at 19-21.)   After approximately ten minutes of arguing, Johnson saw Kirnon, Stewart, and the other man remove automatic firearms from their waists and start shooting.  (*Id.* at 21-22.)  Johnson testified that he heard approximately twenty shots fired; he was shot eight times.  (*Id.* at 24.)  Johnson also stated that he was not carrying a weapon on the night of the incident and was unaware as to whether Cuthbert was armed.  (*Id*. at 45.)

Danny Gissentanner, a second eyewitness to the incident, also testified.  Gissentanner stated that he was conversing with Johnson and Cuthbert until Kirnon and his group approached. (*Id.* at 82-83.)  Gissentanner recalled overhearing the men yelling, and noted that the shooting began suddenly.  (*Id.* at 85.)  Further, Gissentanner stated that neither Johnson nor Cuthbert fired any shots in Kirnon's direction, although he did testify to removing a weapon from Johnson's waist after the shooting because he feared that Johnson would face criminal charges.  (*Id.* at 93-94.)  Ballistics confirmed that this gun was not discharged during the exchange.  Gissentanner

viewed this altercation from approximately seven feet away.  (*Id.* at 85.)

Finally, Christine Fielding, Kirnon's girlfriend at the time of the shooting, testified that Kirnon had called her on the night of the incident and told her that he had been involved in a shooting.  (Trial Tr. vol. 5, 55, Oct. 31, 2003.)  At first, Kirnon called Fielding to let her know he was "having some problems" and that he would explain the problems when he arrived home. (*Id.*)  At home, Kirnon told Fielding that he shot at Johnson and Cuthbert and that he believed he had "hit a guy."  (*Id.*)  The next day, Fielding stated that Kirnon said he received a phone call informing Kirnon that the man he shot at had died.  (*Id.*)  Fielding testified that Kirnon said he decided to go "on the run because he knew police were looking for him."  (*Id.*)

This evidence supports the Superior Court's factual determinations and precludes the court from finding that the Superior Court was "objectively unreasonable" when making its factual determinations.  Because the I find the Superior Court did not base its decision on unreasonable factual determinations, § 2254(d)(2) does not provide Kirnon with an avenue for habeas relief.

**IV.    Conclusion**

For the reasons stated above, the court finds that claims I-VII are procedurally defaulted. Kirnon's failure exhaust claim V and failure to comply with Pennsylvania Rules of Appellate Procedure with respect to claims I-IV, VI and VII constitute independent and adequate procedural grounds that bar habeas review.  Additionally, the court finds that the Superior Court's review of Kirnon's sufficiency claim was not contrary to or an unreasonable application of the *Jackson* standard under § 2254(d)(1) or based on an unreasonable determination of the facts under § 2254(d)(2).  As such, claims VIII and IX are denied.  Accordingly, the court finds

that Kirnon is not entitled to habeas corpus relief.

I must now determine if I should issue a certificate of appealability.  A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  According to the Supreme Court,

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.* Reasonable jurists could not disagree about petitioner's procedural default and his failure to show either cause and prejudice or a miscarriage of justice.  Therefore, the court will not issue a certificate of appealability with respect to claims I-VII.

Additionally, the court has determined that on the basis of the record before the court, petitioner's remaining claims (VIII and IX) are without merit.  The court is persuaded that reasonable jurists would not find this assessment debatable or wrong.  Therefore, defendant has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue with respect to claims VIII and IX.  An appropriate order follows.

22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMIE KIRNON, | : |
|     Petitioner, | : |
|  | :    CIVIL ACTION |
|     v. | : |
|  | :    NO. 07-4474 |
| MICHAEL KLOPOTOSKI, et al. | : |
|     Respondents. | : |
|  | : |
|  | : |
|  | : |

## Order

YOHN, J.

    And now, this 17th day of December 2008, upon careful consideration of Jamie Kirnon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the government's and petitioner's responses, the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey, and petitioner's objections thereto, it is hereby **ORDERED** that:

1. Petitioner's objections are **OVERRULED**;

2. The Recommendation of United States Magistrate Judge Elizabeth T. Hey is **APPROVED**;

3. The petition for writ of habeas corpus is **DISMISSED** in part and the balance **DENIED**;

4.  The Clerk shall **CLOSE** this case for statistical purposes; and

5. Petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.


                                              s/ William H. Yohn Jr., Judge
                                              William H. Yohn Jr., Judge